# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHERRY LYNN PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-595-PJC |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant, Sherry Lynn Phillips ("Phillips"), pursuant to 42 U.S.C. § 405(g), requests

judicial review of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying Phillips' application for supplemental security income benefits under

Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. §

636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge.

Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Phillips appeals

the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred

because the ALJ incorrectly determined that Phillips was not disabled. For the reasons discussed

below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Phillips was 40 years old at the time of the hearing before the ALJ on November 17,

2011. (R. 32). She had a tenth-grade education. *Id.*

Phillips was using a cane at the hearing, and she testified that she had used it from the

time she hurt her left knee in 2008 and then injured it again in 2010. (R. 33). She testified that

the cane was prescribed by Dr. Johnston. (R. 37). Phillips agreed that there had been an incident at a clinic when she did not have her cane and her knee buckled. (R. 41). Phillips said that she had forgotten her cane that day and that she might forget her cane about once a month. *Id.* She said that her knee had buckled once when she was in the shower. *Id.* She said that her biggest fear was having her knee give out while she was walking. *Id.*

Phillips had knee surgery in March 2011. (R. 34). She agreed that the medical records said she was doing well after the surgery, but she said she had good days and bad days. *Id.* On a good day, she could walk about 100 yards, and on a bad day about 25 yards. *Id.* Phillips said that the 2011 surgery made her able to walk farther, about 50 yards before the surgery and about 100 yards after. (R. 38-39). She had not experienced much other improvement, because she still had significant pain and swelling. (R. 39). Her physicians had prescribed injections into her knee that were to start two weeks after the hearing. (R. 39-40). Phillips testified that she was also going to receive injections in her left heel, due to bone spurs. (R. 40).

Phillips testified that, before the 2010 injury, she could walk about an eighth-of-a-mile. (R. 34). She could not stand for five minutes, because her left thigh would go numb. (R. 35). The doctors had told her that she had damaged the sciatic nerve due to heavy lifting and that the damage caused swelling and inflammation. *Id.* She could sit for perhaps 20 minutes at the most. (R. 36).

Phillips said that, at the time of the hearing, she could not stand for more than five minutes. (R. 35). She said that she could not sit for more than ten minutes. (R. 35-36). She said that she reclined and propped her knee up on the couch. (R. 36). If she did not prop up her knee, she would have swelling. *Id.* Phillips said that reclining on the couch was the position in which she watched television, read, or ate. (R. 45). She said she had not sat at a table in about 20

years. *Id.* She said that she was "having issues with bone spurs." (R. 36). When asked if she was taking medication for the swelling, Phillips said that she was taking meloxicam for arthritis. *Id.*

Phillips testified that she had problems with her hands, and she had previously had surgery for carpal tunnel syndrome in her right hand. (R. 42). She had previously done bead work and had stopped about three years earlier because she could not hold items steady enough for the work. *Id.* She had a cyst and two knots in her left hand at the time of the hearing, and she said they caused numbness, coldness, and loss of grip. *Id.*

Phillips testified that she was 5' 5" tall, and she weighed 326 pounds at the hearing, which was an increase of about 45 pounds in six months. (R. 38).

Phillips testified that one medication she was taking was for fluid retention, and it caused her to need to use the restroom about every ten minutes. (R. 43-44). She said that other medications caused her to be drowsy, and she might sleep for two to three hours. (R. 44). She had sleep apnea, and she used a mask, but she still had trouble getting into a position that allowed her to sleep. *Id.* She said she took four sleeping pills and a muscle relaxer to sleep at night. *Id.* Due to acid reflux, she needed to have her head elevated, and she needed to keep her knee bent or propped on a pillow. (R. 44-45).

Phillips said that she did her own laundry and everyone in the household did some of the household chores. (R. 47-48). She did not go to physical therapy because she "couldn't afford to go back and forth." (R. 48). She didn't do physical exercises that had been prescribed for her to do at home because they were too painful. *Id.*

The administrative transcript includes a report from an MRI of Phillips' lumbar spine completed on October 2, 2007 that reflected minimal degenerative disk disease. (R. 376).

Phillips was seen at the Salina Cherokee Nation Indian Clinic (the "Salina Clinic") on October 3, 2007. (R. 315). Diagnoses were diabetes, hypertension, gastroesophageal reflux disease ("GERD"), depression, and chronic back pain. *Id.* On October 16, 2007, Phillips was diagnosed with diabetes, lower extremity edema, and low back pain. (R. 313). On November 5, 2007, and November 13, 2007, Phillips complained of right wrist and forearm pain. (R. 311-12).

On January 10, 2008, Phillips returned to the Salina Clinic and was diagnosed with diabetes, hypertension, GERD, depression, dyssomnia, chronic back pain, and left elbow pain. (R. 310). During a diabetic foot checkup, Phillips said that her heels were hurting. *Id.* On February 25, 2008, Phillips complained of continuing left elbow pain. (R. 309). On April 17, 2008, Phillips complained of lower extremity swelling and continuing left elbow pain. (R. 305). Diagnoses were diabetes, hypertension, GERD, depression, dyssomnia, chronic back pain, and lower extremity swelling. (R. 305). Thromboembolism-deterrent ("TED") hose were prescribed. *Id.*

Phillips was seen at the Sam Hider Jay Community Clinic (the "Jay Clinic") on November 21, 2008 with left knee pain and swelling. (R. 262). She was diagnosed with left knee pain and morbid obesity, she was prescribed medication, and she was instructed to elevate the knee and use warm, moist heat. *Id.*

Phillips presented to the emergency room at the W. W. Hastings Indian Medical Center (the "Hastings Medical Center") on November 24, 2008 complaining of left knee pain for a duration of two weeks. (R. 449-52). X-rays showed modest hypertrophic spurring of the patella of Phillips' left knee. (R. 792). The diagnosis was left knee contusion and left medial collateral ligament tear. (R. 452). Phillips was instructed to use crutches with "no weight bearing," and she was instructed to rest and elevate the leg. *Id.*

Phillips presented to the emergency room at the Hastings Medical Center on January 5, 2009 complaining of right lower extremity swelling for two weeks. (R. 445-48). On physical examination, Phillips was found to have 4+ pitting edema,[1] and she was diagnosed with peripheral edema. (R. 447).

Phillips presented to the Salina Clinic on January 13, 2009 requesting left knee x-rays. (R. 287). Phillips said that she had been seen at the emergency room at the Hastings Medical Center on January 5, 2009 for edema. *Id.* X-ray images of Phillips' left knee completed January 13, 2009 were unremarkable. (R. 362). Phillips returned to the Salina Clinic for a routine appointment on January 20, 2009. (R. 286). Diagnoses were diabetes, edema, obesity, hypertension, medial collateral ligament tear of her left knee, back pain, depression, hyperlipidemia, anemia, and insomnia. *Id.* Phillips complained of knee pain again at an appointment on March 3, 2009. (R. 282).

On March 16, 2009, Phillips was seen for a consultation by Victor R. Palomino, D.O., at The Orthopaedic Center. (R. 374-75). Dr. Palomino's impression was that Phillips had a likely medial meniscus tear of her left knee, and he ordered an MRI. (R. 375).

Phillips returned to the Salina Clinic on April 20, 2009, and diagnoses included diabetes, hypertension, insomnia, internal derangement of her left knee, and osteoarthritis. (R. 280).

An MRI of Phillips' left knee completed June 22, 2009 showed a tear of the posterior horn and peripheral aspect of the medial meniscus, a tear of the superior medial collateral

---

[1] This hand-written note used the abbreviation "4+ PE" under a line for extremities, and this reviewer views this as clearly communicating 4+ pitting edema. (R. 447). This interpretation appears to be confirmed by the hand-written diagnosis of peripheral edema later in this treating record. *Id.* Given this diagnosis on this date, the undersigned has assumed that later abbreviations of "PE" were also intended to communicate pitting edema, and this summary of the medical evidence reflects that assumption.

ligament, questionable partial tear of the anterior cruciate ligament, and bursal effusion. (R. 372).

At a checkup on July 16, 2009 at the Salina Clinic, Phillips was noted to be depressed and on medications. (R. 275). She was diagnosed with degenerative joint disease of her knees, and it was noted that she needed surgery. *Id.*

Phillips returned to Dr. Palomino on October 13, 2009, and he recommended allograft anterior cruciate ligament reconstruction with partial meniscectomy. (R. 384).

Phillips was seen at the Salina Clinic on November 5, 2009, and her diagnoses included major depressive disorder. (R. 843). Her medications included bupropion (Wellbutrin). *Id.* On January 13, 2010, Phillips' diagnoses included low back pain. (R. 840).

Phillips' gallbladder was removed on April 8, 2010, and she presented to the emergency room on April 16, 2010 with fever and pain. (R. 657). She was diagnosed with gallbladder fossa abscess, which was surgically drained. *Id.* She was hospitalized at the Hastings Medical Center from April 16-30, 2010. (R. 583-712). A sleep study with CPAP (continuous positive airway pressure) was completed during this hospitalization on April 17, 2010. (R. 694).

At the Salina Clinic on July 22, 2010, Phillips' diagnoses included osteoarthritis and pitting edema. (R. 831). Diagnoses on August 25, 2010 included obesity, osteoarthritis, dyssomnia, and internal derangement of the left knee. (R. 828).

A customer statement report dated September 3, 2010 reflects that Phillips was sitting on a bench at Wal-Mart when a store employee hit the bench with a pallet of water, knocking Phillips' knee into a shopping cart. (R. 518). Phillips was seen at Hastings Medical Center on September 4, 2010. (R. 509-16). She was instructed to elevate the knee as much as possible and to use an ace bandage for comfort. (R. 516). X-rays of Phillips' left knee completed at the

6

Hastings Medical Center on September 4, 2010 showed mild osteoarthritis. (R. 770). Phillips returned the next day, September 5, 2010, stating that the pain and swelling were worse. (R. 501-04).

Phillips was seen at the Salina Clinic on September 13, 2010, complaining of left leg pain since the injury at Wal-Mart on September 3, 2010. (R. 827). Diagnoses were internal derangement of the left knee; status post trauma; and left hip pain. *Id.*

An MRI of Phillips' left knee completed on October 13, 2010 was limited for technical reasons, but the reviewing physician stated the results as follows: "Major pathology appears to be in the medial meniscus that is extruded, degenerative, and I think has a complex tear of the posterior horn." (R. 813).

On October 19, 2010 at the Salina Clinic, Phillips continued to complain of left knee pain. (R. 818). The hand-written examination notes appear to state that Phillips had an effusion of the knee and that the knee was tender to palpation. *Id.* On October 28, 2010, Phillips complained that the swelling in her left leg was getting worse and that she was having difficulty sitting for long periods of time. (R. 817). It appears that she was instructed to wear an elastic knee wrap or brace. *Id.*

Phillips was seen at the Salina Clinic on November 9, 2010, and diagnoses included GERD, insomnia, and major depressive disorder. (R. 816). Medications prescribed included bupropion (Wellbutrin). *Id.* At the Salina Clinic on December 6, 2010, Phillips' diagnoses included low back pain, pitting edema, and internal derangement of the left knee. (R. 874). She was also diagnosed with major depressive disorder that was noted to be refractory and severe. *Id.* It appears that Phillips was instructed to wean herself from Wellbutrin and to begin taking

Geodon. *Id.* X-rays of Phillips' right foot taken December 22, 2010 showed a moderate plantar heel spur. (R. 920).

Phillips was seen for intake for behavioral health care at the Salina Clinic on January 11, 2011, by Colleen Springer, M.S.W. (R. 908-09). Phillips' chief complaints were depression and anxiety, and Ms. Springer diagnosed her with major depressive disorder, recurrent, moderate; and generalized anxiety disorder. *Id.*

Phillips was seen for follow-up at the Salina Clinic on January 25, 2011, and she said that she had gained weight since taking Geodon. (R. 905-07). Phillips said she still had some swelling and pain in her leg. (R. 905). Phillips had an antalgic gait with a cane. (R. 906). On examination, she had a trace of edema, and her knees were diffusely tender to palpation. *Id.* She was given a prescription for Ambien. *Id.*

Phillips was seen by Dr. Palomino at The Orthopaedic Center on January 31, 2011 for reevaluation of her left knee, and she was scheduled for surgery. (R. 923).

Phillips was seen at the Salina Clinic on February 8, 2011, and she was allowed to increase the amount of Flexeril she took. (R. 901-04).

Phillips was seen by Ms. Springer in behavioral health at the Salina Clinic on February 14, 2011. (R. 899-900). Phillips complained of difficulty sleeping and feeling tired all of the time. (R. 899). She said that she was "doing better about her depression." *Id.* Ms. Springer's diagnoses remained the same. *Id.*

Dr. Palomino saw Phillips on March 31, 2011 for follow-up after her March 23, 2011 arthroscopic left knee anterior cruciate ligament reconstruction with partial meniscectomy. (R. 924). Dr. Palomino said that the knee looked healthy, without full extension, but with almost full flexion. *Id.* On May 26, 2011, Phillips had full extension and flexion comfortably to 120

degrees, with good stability.  (R. 925).  Phillips was to transition from her post operative brace to a new brace, and she was to continue physical therapy.  *Id.*

Phillips was seen for treatment of her obstructive sleep apnea, including adjustment of her CPAP mask in May, June, and July 2011.  (R. 936-42).

At an appointment with Dr. Palomino on July 21, 2011, Phillips said that her knee was "doing great," and she had not been attending physical therapy or wearing her brace.  (R. 926).  On examination, Dr. Palomino said that the graft felt stable.  *Id.*

Phillips was seen at the Salina Clinic on July 28, 2011 for an annual examination.  (R. 880-90).  On examination, Phillips had a trace of edema in her extremities.  (R. 886).

On September 19, 2011, Phillips told Dr. Palomino that her knee was "doing fantastic," and Dr. Palomino said that the knee had excellent range of motion, good graft stability, and good strength.  (R. 927).

Records from the Salina Clinic dated November 28, 2011 reflect that Phillips was given an injection to her left knee as part of viscosupplementation to treat osteoarthritis.  (R. 928-35).  Phillips also complained of left heel pain.  (R. 928).

Agency consultant Minor Gordon, Ph.D., completed a psychological evaluation of Phillips on February 17, 2010.  (R. 386-89).  He observed that Phillips walked slowly with a cane, which he attributed to morbid obesity.  (R. 387).  Phillips was attentive and alert, and she maintained good eye contact.  *Id.*  Her affect was mildly depressed, and Dr. Gordon attributed her disturbed sleep to depression.  *Id.*  He estimated Phillips' intelligence as average to low average, and he said that Phillips might "have some difficulty passing judgment in a work situation depending on the complexity of the task."  *Id.*  Phillips' memory was adequate.  *Id.*  In his summary, Dr. Gordon stated that Phillips' "depression appears to be mild and certainly should

not preclude her from gainful employment.  Ms. Phillips should be able to perform some type of routine repetitive task on a regular basis."  *Id.*  His diagnosis on Axis I[2] was mild depression, not otherwise specified, and he assessed Phillips' Global Assessment of Functioning ("GAF")[3] as 75.  (R. 387-88).

Agency nonexamining consultant Dorothy Millican-Wynn, Ph.D., completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment dated February 22, 2010.  (R. 390-407).  In the Psychiatric Review Technique form, for Listing 12.04, Dr. Millican-Wynn noted Phillips' depressive syndrome.  (R. 393).  For the "Paragraph B Criteria,"[4] Dr. Millican-Wynn indicated that Phillips had mild restriction of activities of daily

---

[2] The multiaxial assessment system "facilitates comprehensive and systematic evaluation."  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereinafter "DSM IV").

[3] The GAF score represents Axis V of the multiaxial assessment system.  *See* DSM IV at 32-36.  A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning."  *Id.* at 32.  The GAF scale is from 1-100.  A GAF score between 21-30 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas."  *Id.* at 34.  A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *Id.*  A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning," and 51-60 reflects moderate symptoms or moderate difficulty in functioning.  *Id.*  Scores between 61-70 reflect "some mild symptoms" or "some difficulty" in functioning, but "generally functioning pretty well."  *Id.*  A score between 71 and 80 reflects symptoms that are transient and reactions to stressors with no more than slight impairment in functioning.  *Id.*  *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

[4] There are broad categories known as  the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment.  The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration.  Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C.  *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (R. 400). In the "Consultant's Notes" portion of the form, Dr. Millican-Wynn noted Phillips' physical problems, her history of some suicidal thoughts, and her sleep problems. (R. 402). She briefly summarized Dr. Gordon's consultative examination report, including those portions of his summary quoted above. *Id.*

In the Mental Residual Functional Capacity Assessment, Dr. Millican-Wynn indicated that Phillips was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to interact appropriately with the general public. (R. 404-05). Phillips was not significantly limited in the other areas listed on the form. *Id.* In the narrative section, Dr. Millican-Wynn wrote that Phillips could perform simple and some complex tasks, she could relate to others on a superficial work basis, and she could adapt to a work situation. (R. 406).

Agency consultant Ronald Schatzman, M.D., completed a physical examination of Phillips on May 13, 2010. (R. 411-16). After reviewing Phillips' medical history, Schatzman first noted that she was morbidly obese. (R. 411-12). Schatzman noted that Phillips' knee was tender, but he said that examination was limited due to her obesity. (R. 413). He said that her knees had no effusion or edema, and they were stable in all range of motion exercises. *Id.* Phillips' spine was not tender and had full range of motion. *Id.* Phillips used a cane to walk, and Dr. Schatzman described her gait as broad-based, careful, safe, and stable. *Id.* He said heel- and toe-walking was normal. *Id.* His assessments included diabetes; low back pain by history; use of cane due to buckling of the knee; and morbid obesity. *Id.*

Nonexamining agency consultant Carmen Bird, M.D., completed a Physical Residual

Functional Capacity Assessment on June 15, 2010. (R. 417-24). Dr. Bird indicated that Phillips

could perform a range of work at the "sedentary" exertional level, with a cane being necessary for

walking. (R. 418). For narrative explanation, Dr. Bird noted Phillips' medical issues and her

weight. *Id.* She summarized Dr. Schatzman's consultative examination report. (R. 418-19).

She noted that an MRI had confirmed the tear of the posterior horn of the medial meniscus and

anterior cruciate ligament tear of Phillips' left knee. *Id.* For postural limitations, Dr. Bird

indicated that Phillips could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (R.

419). Dr. Bird found no manipulative, visual, communicative, or environmental limitations. (R.

420-21).

### Procedural History

Phillips filed her application for supplemental security income benefits on September 23,

2009. (R. 146-48). The application was denied initially and on reconsideration. (R. 69-72, 75-

77). An administrative hearing was held before ALJ Edmund C. Werre on November 17, 2011.

(R. 25-53). By decision dated January 27, 2012, the ALJ found that Phillips was not disabled.

(R. 10-19). On July 10, 2013, the Appeals Council denied review. (R. 1-5). Thus, the decision

of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §

416.1481.

### Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability

claim. 20 C.F.R. § 404.1520.[5] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009)

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not

disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation

and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g). This Court's review is limited to two inquiries: first, whether the decision was supported

by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to

support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the

court will not reweigh the evidence, the court will "meticulously examine the record as a whole,

---

[5] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

**Decision of the Administrative Law Judge**

In his decision, the ALJ found at Step One that Phillips had not engaged in any substantial gainful activity since her application date of September 21, 2009. (R. 12). At Step Two, the ALJ found that Phillips had severe impairments of left knee impairment, status post repair; obesity; and diabetes. *Id.* He found that Phillips' history of carpal tunnel syndrome and surgery, as well as her hypertension, were not causing any work-related problems. *Id.* He found that Phillips' medically determinable mental impairment of depressive disorder was nonsevere. (R. 12-13). At Step Three, the ALJ found that Phillips' impairments did not meet any Listing. (R. 13-14).

The ALJ found that Phillips had the RFC to perform a range of work at the sedentary exertional level with a cane necessary for walking, but not balancing. (R. 14). At Step Four, the ALJ determined that Phillips could not return to past relevant work. (R. 18). At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Phillips could perform, taking into account her age, education, work experience, and RFC. (R. 18-29). Therefore, the ALJ found that Phillips was not disabled at any time since September 21, 2009. (R. 19).

**Review**

Phillips asserts errors by the ALJ in omitting any mental limitations from his RFC determination and in his assessment of the limitations from Phillips' left knee impairment. Plaintiff's Opening Brief, Dkt. #18, p. 5. The Court agrees that the ALJ did not adequately discuss the opinion evidence of the agency mental examining and nonexamining consultants and

that he did not give an adequate justification for his rejection of that evidence. For these reasons, the decision is **REVERSED AND REMANDED**.

An ALJ must discuss more than just the evidence favorable to an opinion that a claimant is not disabled:

> [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is error to ignore evidence that would support a finding of disability while highlighting the evidence that favors a finding of nondisability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). In addition to these general principles regarding evidence, an ALJ is required to discuss all opinion evidence and to explain what weight he gives it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. 404.1527(c). The ALJ's evaluation is sufficient if a reviewing court can follow his reasoning.

> In sum, we reject [claimant's] contention that the ALJ's opinion does not adequately evaluate and discuss the medical-source evidence. Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.

*Keyes-Zachary*, 695 F.3d at 1167. The *Keyes-Zachary* court also said that "common sense, not technical perfection, is [the] guide" of a reviewing court and that "[t]he more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Id.* at 1166.

While the undersigned is not seeking technical perfection on the part of the ALJ, here the ALJ's discussion of the evidence of Dr. Gordon and Dr. Millican-Wynn does not comply with the legal requirements of *Clifton* and *Robinson* stated above. The ALJ failed to cite to the reports of either of the mental consultants in making his determination at Step Two that Phillips' mental

15

impairments were nonsevere. (R. 12-13). In the body of his report, he gave a four-sentence

summary of Dr. Gordon's report, including that consultant's statement that Phillips' depression

should not preclude her from gainful employment. (R. 16). In his brief summary, the ALJ did not

include the next sentence of Dr. Gordon's report, that Phillips should be able to perform some

type of routine repetitive task. *Id.* The ALJ never mentioned Dr. Millican-Wynn or gave any

summary of her two reports. (R. 10-19). Instead, his decision includes only the following

paragraph that apparently alludes to Dr. Millican-Wynn's reports by referring to them as the

"State agency's opinions":

> The claimant has alleged problems with depression. In the consultative
> examination by Dr. Gordon, he opines she only has mild symptoms, which should
> not interfere with employment. She was seen for mental health in January and
> February 2011. When the claimant returned in February, she informed the
> counselor [] that her depression was much better. The claimant was supposed to
> return in one month[;] however[,] she was apparently doing much better, and did
> not return for mental health treatment. These reports are given more weight [than
> the] State agency's opinions.

(R. 17).

Pursuant to the dictates of *Clifton* and the Commissioner's own regulations, the ALJ was

required, at a minimum, to include in his discussion the additional sentence of Dr. Gordon's

report that alludes to routine repetitive tasks and the three moderate limitations found by Dr.

Millican-Wynn, as well as her narrative comment that Phillips could perform simple and some

complex tasks. These items were opinion evidence that arguably favored Phillips' claim of

disability. *See Carpenter*, 537 F.3d at 1266-70 (reversing because the ALJ's discussion of

evidence tending to support the claim of disability was inadequate and he ignored some evidence

favorable to claimant). In *Carpenter*, the ALJ found that some of the claimant's mental

limitations were mild even though a nonexamining consultant had given an opinion that they were

moderate. *Id.* at 1270. The ALJ did not discuss the nonexamining consultant's opinion evidence,

and the reviewing court was unable to determine how the ALJ had reached his conclusion that the claimant's limitations were mild. *Id.* The undersigned here is in the same position as the Tenth Circuit was in *Carpenter*, and reversal and remand is required so that the ALJ can properly discuss and evaluate the evidence of both Dr. Gordon and Dr. Millican-Wynn.

Moreover, the ALJ's implied reason for rejecting the opinion evidence of Dr. Millican-Wynn is not adequately articulated, is not legally sufficient, and is not supported by substantial evidence. The ALJ's last sentence appears to indicate that he gave more weight to two treating records from January and February 2011 than to Dr. Millican-Wynn's opinion evidence. Part of the reason why this reasoning is inadequate is because the quoted paragraph from the ALJ's decision includes factual errors and speculation. The February 14, 2011 notes from Ms. Springer state that Phillips reported that she was "doing better about her depression," rather than stating that "her depression was much better" as the ALJ wrote. (R. 17, 899). This reviewer finds the differences in wording to be significant, including the ALJ's insertion of the word "much." The wording of Ms. Springer's treating records suggests not that Phillips' depression was better, but that Phillips' ability to cope with her depression had improved. This interpretation is somewhat buttressed by the fact that Ms. Springer continued to assess Phillips' major depressive disorder as "moderate." (R. 899).

A second factual problem with the ALJ's discussion is that he stated that Phillips did not return after the February 2011 appointment because she "was apparently doing much better." (R. 17). The undersigned is concerned that this is improper speculation on the part of the ALJ. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (ALJ may not reject treating physician opinion based on his own credibility judgments, speculation, or lay opinion). Moreover, the medical records show that Phillips had arthroscopic surgery on her left knee on March 23, 2011.

17

(R. 924).  The undersigned does not want to engage in speculation to counter the speculation of

the ALJ, but it seems possible that Phillips' surgery may have kept her from returning for mental

health treatment in March 2011 and perhaps some period of her recovery from that surgery.

However, it is true, as the ALJ stated, that the remainder of the available records, through

November 2011, do not include any additional mental health treatment.

In any case, the undersigned finds that the records the ALJ used as the crux of his

reasoning are too insignificant to provide substantial evidence to support the rejection of Dr.

Millican-Wynn's opinion evidence.  Phillips' scanty evidence of treatment by a mental health

provider and her comment that she was "doing better about her depression" simply do not support

a rejection of the opinion of a mental health expert that Phillips had moderate mental limitations.

Moreover, with one exception,[6] the ALJ appears to have failed to note in his decision the rather

lengthy history Phillips had with her primary treating physicians of diagnoses of depression and

treatment with prescription antidepressants.  (R. 12-18).  Phillips was diagnosed with depression

on multiple occasions and appears to have been prescribed several antidepressants at various

times, apparently in an attempt to find the most effective one.  (R. 275, 286, 305, 310, 315, 816,

843, 874).  On December 6, 2010, Phillips' primary care physician noted that her depression was

refractory and severe.  (R. 874).  The evidence that Phillips sought antidepressants from her

primary care provider from at least October 2007 through December 2010 negates at least in part

the ALJ's reasoning that Phillips had depression that was minor enough in severity that she

needed no treatment after two sessions with a mental health clinician.  The ALJ should have

included a discussion of this evidence in his decision because it was significantly probative.  *See*

---

[6] In his summary of the report of the physical examining consultant Dr. Schatzman, the
ALJ included mention of Phillips' prescribed antidepressants.  (R. 16).

*Jones v. Colvin*, 514 Fed. Appx. 813, 823-24 (10th Cir. 2013) (unpublished) (ALJ's omission of uncontroverted evidence supporting claimant's allegations of pain went "beyond the merely technical" and called into question whether the appropriate standards had been applied).

**Conclusion**

The Court takes no position on the merits of Phillips' disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because this case is reversed based on the ALJ's failure to discuss significantly probative evidence of Phillips' mental limitations including Dr. Millican-Wynn's assessment and part of Dr. Gordon's report, and his failure to adequately justify his rejection of the opinion evidence of Dr. Millican-Wynn, the undersigned declines to discuss Phillips' other asserted appeal issues. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Phillips.

Based on the foregoing, the decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 30th day of December 2014.

Paul J. Cleary
United States Magistrate Judge